UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARK ADAMCZYK,

                              Plaintiff,

v.

ANTHONY ANNUCCI, JOHN DOE Ex.
MANAGEMENT TEAM, JANE DOE Ex.
MANAGEMENT TEAM, and NEW YORK
STATE DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION,

                              Defendants.
_____

**REPORT AND RECOMMENDATION**

16-CV-00239(LJV)(JJM)

        Plaintiff is a former employee of the New York State Department of Corrections and Community Supervision ("DOCCS"), who commenced this 42 U.S.C. §1983 action *pro se*, alleging that he "was framed in a use of force case" by the DOCCS' Inspector General ("IG"), resulting in the "loss of his career". Second Amended Complaint [29], p. 17 of 23 (CM/ECF), ¶3.[1] Before the court is defendant Anthony Annucci's unopposed motion to dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. ("Rule") 12(b)(6) [32], which has been referred to me by District Judge Lawrence J. Vilardo for initial consideration [15]. Having reviewed the motion, I recommend that it be granted.

**BACKGROUND**

        Plaintiff acknowledges that this is not his first suit arising from the termination of his employment with DOCCS. Second Amended Complaint [29], p. 9 of 23 (CM/ECF), ¶9. In

---

[1]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

Adamczyk v. New York State Department of Correctional Services, 07-CV-00523(WMS),[2] plaintiff alleged that his 2006 termination from DOCCS as a lieutenant at Wende Correctional Facility was based upon his race. The claim was dismissed by summary judgment. *See* Adamczyk v. New York State Department of Correctional Services, 2011 WL 917980, *1 (W.D.N.Y. 2011), aff'd, 474 Fed. App'x 23 (2d Cir. 2012) (Summary Order).[3]

In the current action, plaintiff alleges that in December 2013 a New York State senator sent a letter to defendant Annucci, the Commissioner of DOCCS, requesting that plaintiff's termination be "reviewed for fairness". Second Amended Complaint [29], p. 11 of 23 (CM/ECF). In response, DOCCS Deputy Commissioner Martuscello stated that "plaintiff was insubordinate, went to arbitration, and was terminated pursuant to the union contract". Id. Plaintiff alleges that on October 20, 2014, he sent a complaint to the New York State Inspector General, which consisted of 280 pages of documents and testimony concerning misconduct by the IG in his firing and "clearing him of any wrong doing". Id., pp. 7 (¶2), 11-12, 19 (¶1) of 23. The complaint was then allegedly forwarded to the DOCCS' Executive Management Team, consisting of defendant Annucci and other John and Jane Doe defendants. Id., pp. 7(¶2), 13 of 23.

Plaintiff alleges that at that time of that complaint, the IG was "undergoing a serious investigation of misconduct", and that "to avoid having to bring more discredit to [DOCCS] and prevent having to investigate more complaints of misconduct", the Executive Management Team ignored his "proof of innocence". Id., pp. 8-9 (¶¶7, 8), 15, 16 (¶2) of 23.

---

[2]   In 2011, the New York State Department of Correctional Services became known as DOCCS. Defendant's Memorandum of Law [32-1], p. 3 n. 3.

[3]   "It is well established that a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6)". Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998).

According to plaintiff, the investigation into the IG eventually "uncovered so much official misconduct that the entire department . . . was disbanded or dismantled". Id., p. 12 of 23. He alleges that defendant Annucci and the Executive Management Team failed in its responsibilities to properly supervise the IG, which had "no interest in proper techniques, fair . . . investigations, good will, the law or the constitution". Id., p. 14 of 23.

As a result of this conduct, plaintiff alleges that he was denied substantive due process and equal protection as a class of one (First and Third Claims), that defendant Annucci failed to supervise and train his subordinates, resulting in him being denied equal protection (Second Claim), and that defendants conspired to deny him equal protection as a class of one (Fourth Claim). For each of his claims, plaintiff seeks damages for "pain and suffering", as well as for "wages and lost accruals". Id., pp. 4-6 of 23.

This is defendant Annucci's third motion to dismiss. The first [7], directed to the Complaint [1], was met with a cross-motion for leave to file an Amended Complaint [12], which defendant did not oppose. February 27, 2018 Text Order [18]. Likewise, in response to defendant's next motion to dismiss [21], plaintiff cross-moved to file a Second Amended Complaint [29], which was granted as unopposed. July 12, 2018 Text Order [31].[4]

Unlike the prior dismissal motions, plaintiff has not cross-moved for leave to amend. Instead, in an August 3, 2009 e-mail to my staff, plaintiff stated "I will not be responding to defendants (*sic*) motion . . . . I oppose their request [b]ut feel that everything that needed to be said was put in the complaint" [34].

---

[4] As defendant Annucci notes, DOCCS was added as a defendant in the Second Amended Complaint, but was not served with that pleading. Defendant's Memorandum of Law [32-1], p. 2. Since plaintiff does not have *in forma pauperis* status, it remains his responsibility to have DOCCS served with the Second Amended Complaint. It also currently remains his responsibility to identify and serve the John/Jane Doe defendants.

However, even absent a substantive response from plaintiff, I cannot "grant a motion to dismiss solely on the ground that it is unopposed. Rather, where a Rule 12(b) motion has not been opposed, this Court must review the merits of the motion and determine whether the movant has carried its burden." Anderson v. Pedalty, 2015 WL 1735192, *1 (W.D.N.Y. 2015). *See* McCall v. Pataki, 232 F.3d 321, 323 (2d Cir. 2000) ("[i]f a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal"); Foster v. Phillips, 2005 WL 2978686, *3 (S.D.N.Y. 2005).

## ANALYSIS

**A.    Dismissal Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face . . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id.  "When, as here, the complaint is filed by a *pro se* plaintiff, we construe the complaint liberally, interpreting it to raise the strongest arguments that it suggests." Caro v. Weintraub, 618 F.3d 94, 97 (2d Cir. 2010).

### B.     Claims Arising from Plaintiff's Termination

To the extent that plaintiff alleges that his termination was the result of being framed and seeks damages for lost wages and accruals, his claims appear to at least, in part, arise from the termination of his employment in 2005.  As defendant Annucci argues, those claims are time-barred.  Defendant's Memorandum of Law [32-1], p. 6-7.  Any challenge to his termination occurred well beyond the three year statute of limitations for claims under 42 U.S.C. §1983. *See* Shomo v. City of New York, 579 F.3d 176, 181 (2d Cir. 2009).

### C.     Equal Protection Claims

"[T]o succeed on a class-of-one claim, a plaintiff must establish that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake." Progressive Credit Union v. City of New York, 889 F.3d 40, 49 (2d Cir. 2018).  In order to meet this standard, the plaintiff "must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves."  Id.

As defendant Annucci argues, plaintiff fails to identify any comparator (*i.e.*, a current/former employee who also complained to DOCCS about a prior IG investigation), much less that a comparator who was treated differently from him.  Defendant's Memorandum of Law [32-1], pp. 14-15.  For this reason, I recommend that these claims be dismissed.

### D. Substantive Due Process Claims

"[N]ot all wrongs perpetrated by a government actor violate due process." Smith ex rel. Smith v. Half Hollow Hills Central School District, 298 F.3d 168, 173 (2d Cir. 2002). "Substantive due process . . . does not forbid governmental actions that might fairly be deemed arbitrary or capricious". Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999). Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." Id.; County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) ("only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense").

As defendant Annucci argues, the alleged conduct here does not rise to that level. Defendant's Memorandum of Law [32-1], pp. 7-9. Plaintiff's claims center on defendant Annucci's failure to investigate his claims that his termination was the result of being framed. However, "there is no constitutional right to an investigation by government officials . . . and no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved." Lewis v. Gallivan, 315 F. Supp. 2d 313, 317 (W.D.N.Y. 2004); Head v. Ebert, 2017 WL 3017395, *2 (W.D.N.Y. 2017) ("it is well-settled that there is no constitutional right to an investigation by government officials at all"); McCloud v. Prack, 55 F. Supp. 3d 478, 481-82 (W.D.N.Y. 2014) ("[p]laintiff's allegations that [the defendant] deliberately conducted an inadequate investigation for the purpose of covering up [another individual's] alleged misconduct, and that he did so at the direction of [a co-defendant], are likewise insufficient to make out a § 1983 claim against either of them"). Therefore, I recommend that these claims be dismissed.

**E.      Conspiracy Claims**

"To survive a motion to dismiss a conspiracy claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) an agreement between two or more state actors; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal, causing damages." Anderson v. Cameron, 2016 WL 11259015, *5 (W.D.N.Y. 2016), adopted, 2017 WL 2240253 (W.D.N.Y. 2017).   Defendant Annucci argues that the Second Amended Complaint lacks any "allegation that [he], or anyone else, entered into an agreement".  Defendant's Memorandum of Law [32-1], pp. 10-11. I agree.

Alternatively, defendant Annucci argues that even if plaintiff's conspiracy claim was adequately pled, it would be barred by the intracorporate conspiracy doctrine. Id., p. 11. Pursuant to that doctrine, a public entity "generally cannot conspire with its employees or agents as all are considered a single entity". O'Diah v. Mawhir, 2010 WL 6230937, *16 (N.D.N.Y. 2010), adopted, 2011 WL 933846 (N.D.N.Y. 2011).   An exception exists "if the individuals are motivated by personal interests, separate and apart from the entity". Id.  Since the defendants all appear to be employees of DOCCS acting within the scope of their employment and there is no claim that they were pursuing their own independent personal interests, the claim (if sufficiently pled) would also be precluded by the intracorporate conspiracy doctrine.  See id; Richard v. Fischer, 38 F. Supp. 3d 340, 353 (W.D.N.Y. 2014) ("Courts in the Western District of New York apply the intracorporate conspiracy doctrine to bar inmates' conspiracy claims against DOCCS"); Cabassa v. Smith, 2009 WL 1212495, *16 (N.D.N.Y. 2009). Therefore, I recommend that this claim be dismissed.

**F.     Failure to Train or Supervise Claim**

As discussed above, the crux of plaintiff's claim appears to be that defendant Annucci and the Executive Management Team failed in their responsibilities to properly supervise the IG.  Second Amended Complaint [29], pp. 11-15 of 23.  Plaintiff alleges that defendant Annucci and other members of the Executive Management Team came into "possession of the incriminating material outlining misconduct by the [IG] as early as 10-29-2014", when he sent his complaint of alleged misconduct by the IG, yet the Executive Management Team "ignored plaintiff[']s request for vindication".  Amended Complaint [29], p. 12 of 23 (CM/ECF).

A supervisor "may be found liable for his deliberate indifference to the rights of others by his failure to act on information indicating unconstitutional acts were occurring or for his gross negligence in failing to supervise his subordinates who commit such wrongful acts, a plaintiff must show an affirmative causal link between the supervisor's inaction and his or her injury." Curtis v. Williams, 2013 WL 1915447, *6 (S.D.N.Y. 2013).  As defendant Annucci argues, the Amended Complaint does not contain allegations that members of the Executive Management Team, including defendant Annucci, were "aware of, and deliberately ignored, an obvious risk that [the IG] would violate plaintiff's constitutional rights".  Defendant's Memorandum of Law [32-1], p. 18.

In fact, it is not even evident from the Second Amended Complaint that at the time of plaintiff's termination Annucci was a member of the DOCCS' Executive Management Team or had a supervisory role over the IG.  Nor does plaintiff allege that at that time defendant Annucci had notice of any unconstitutional conduct by the IG or the need to correct or stop the IG's conduct by the use of further training and supervision. The fact that defendant Annucci

learned of the IG's alleged misconduct years after plaintiff's termination is not sufficient to make him liable for plaintiff's termination on a failure to supervise and train theory. See JCG v. Ercole, 2014 WL 1630815, *28 (S.D.N.Y.), adopted, 2014 WL 2769120 (S.D.N.Y. 2014) (finding no personal supervisory liability where there was "no suggestion that [the supervisor] knew about or was deliberately indifferent to any risk of harm *prior* to the alleged attack (emphasis in original)). For these reasons, and without any contrary arguments from plaintiff, I recommend that this claim be dismissed.

## CONCLUSION

For these reasons, I recommend that defendant Annucci's motion to dismiss the Second Amended Complaint [32] be granted.  Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the clerk of this court by October 22, 2018 Any requests for extension of this deadline must be made to Judge Vilardo.  A party who "fails to object timely . . . waives any right to further judicial review of [this] decision".  Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance.  Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each

objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: October 4, 2018

                                     /s/ Jeremiah J. McCarthy
                                    JEREMIAH J. MCCARTHY
                                    United States Magistrate Judge